UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**OAK HARBOR FREIGHT LINES, INC.,**

                    Plaintiff,

    v.

**CHAD C. ANTTI**,

                Defendant.

Civil Case No. 3:12-CV-00488-KI (Lead Case)
Civil Case No. 3:12-CV-00546-KI (Trailing Case)
Civil Case No. 3:13-CV-00416-KI (Trailing Case)

OPINION AND ORDER ON PARTIAL
SUMMARY JUDGMENT

Richard C. Hunt
Banu Kite Ramachandran
Edwin A. Harnden
Barran Liebman LLP
601 SW Second Ave.
Suite 2300
Portland, OR 97204-3159

    Attorneys for Oak Harbor Freight Lines, Inc.

Page 1 - OPINION AND ORDER ON PARTIAL SUMMARY JUDGMENT

Benjamin Rosenthal
1023 SW Yamhill St., Ste 200
Portland, OR 97205

  Attorney for Chad C. Antti

Joseph J. Haddad
351 NW 12th Ave.
Portland, OR 97209

  Attorney for Robert S. Argyle

KING, Judge:

These consolidated cases present an issue of first impression in this Circuit regarding an interpretation of the Family and Medical Leave Act ("FMLA"), similar provisions of the Oregon Family and Medical Leave Act ("OFLA") and corresponding regulations.  Pending before me are Oak Harbor's Motion for Partial Summary Judgment, seeking judgment on its claims for declaratory relief in the lead case, Oak Harbor v. Chad Antti, 3:12-cv-488, and in Oak Harbor v. Robert Argyle, 3:13-cv-416.  Also pending is Chad Antti's Cross-Motion for Partial Summary Judgment against Oak Harbor–moving only against Oak Harbor's claim for declaratory judgment in the lead case.

## BACKGROUND

I. Legal Background

The FMLA permits eligible employees to take "a total of 12 workweeks of leave during any 12-month period . . . (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1).  Such leave may be taken intermittently–that is, "in separate blocks of time due to a single qualifying reason"–when supported by a medical need.  Id. at § 2612(b)(1); 29 C.F.R.

Page 2 - OPINION AND ORDER ON PARTIAL SUMMARY JUDGMENT

§ 825.202(a).[1]  If the intermittent leave is foreseeable based on planned medical treatment, the employee must "make a reasonable effort to schedule the treatment so as not to disrupt unduly the operations of the employer, subject to the approval of the" employee's health care provider. 29 U.S.C. § 2612(e)(2).

Additionally, the employer may require that such a leave request be "supported by a certification issued by the health care provider of the eligible employee[.]"  Id. at § 2613(a).  If the employee seeks intermittent leave for planned medical treatment, the certification should state "the dates on which such treatment is expected to be given and the duration of such treatment[.]"  Id. at § 2613(b)(5); see also 29 C.F.R. § 825.305(c) (employee must provide a certification "if required by the employer" in accordance with regulations); § 825.306 (content of medical certification).  Similarly, in the case of intermittent leave for a serious health condition, the certification should contain a "statement of the medical necessity for the intermittent leave . . . and the expected duration of the intermittent leave[.]"  29 U.S.C. § 2613(b)(6). Importantly, "[i]f an employee submits a complete and sufficient certification signed by the health care provider, the employer may not request additional information from the health care provider."  29 C.F.R. § 825.307(a).

There are statutory provisions for an employer to request second and third opinions, and to require the employee to obtain a subsequent recertification "on a reasonable basis."  29 U.S.C. § 2613(e).  By regulation, an employer may request recertification "no more often than every 30 days and only in connection with an absence by the employee" unless an exception applies.  29

---

[1]Similar OFLA provisions are to be interpreted consistently with the FMLA to the extent possible.  OAR 839-009-0220(2).

C.F.R. § 825.308(a).  If, however, the original certification anticipates the medical condition will last more than 30 days, the employer must wait until that minimum duration expires before requesting a recertification.  Id. at § 825.308(b).  Regardless, "[i]n all cases, an employer may request a recertification of a medical condition every six months in connection with an absence by the employee."  Id.  An employer may request recertification in less than 30 days in the case of changed circumstances or when the employer doubts the continuing validity of the certification.  Id. at § 825.308(c); see also OAR 830-009-0260(9).

The employee must give advance notice of foreseeable leave at least 30 days before FMLA leave is to begin, otherwise the employee must give notice as "soon as practicable."  29 C.F.R. § 825.302(a).  Whether continuous or intermittent leave is at issue, the employee need only give notice "one time, but the employee shall advise the employer as soon as practicable if dates of scheduled leave change or are extended, or were initially unknown."  Id.  When the need for leave is not foreseeable, the employee must provide notice "either the same day or the next business day.  In all cases, however, the determination of when an employee could practicably provide notice must take into account the individual facts and circumstances."  Id. at § 825.302(b); see also id. at § 825.303(a) (notice of unforeseeable leave may generally be practicable "within the time prescribed by the employer's usual and customary notice requirements applicable to such leave").

Additionally, the employer

should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken.  *In the case of medical conditions, the employer may find it necessary to inquire further to determine if the leave is because of a serious health condition and may request medical certification to*

*support the need for such leave.* See § 825.305. . . . An employee has an obligation to respond to an employer's questions designed to determine whether an absence is potentially FMLA-qualifying.  Failure to respond to reasonable employer inquiries regarding the leave request may result in denial of FMLA protection if the employer is unable to determine whether the leave is FMLA-qualifying.

Id. at § 825.302(c) (emphasis added); § 825.303(b) (employee must provide sufficient information for an employer to determine whether FMLA applies; employer expected to obtain additional information through informal means); see also OAR 839-009-0250(1)(b) (may request additional information).

Importantly,

[a]n employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances.  For example, an employer may require that written notice set forth the reasons for the requested leave, the anticipated duration of the leave, and the anticipated start of the leave.  An employee also may be required by an employer's policy to contact a specific individual . . . . Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied

29 C.F.R. § 825.302(d); see also OAR 839-009-0270(7) ("An employer may require an employee to follow the employer's established leave policy regarding periodic reporting to the employer of the employee's current status.").

Finally, the regulations require intermittent leave to be "medically necessary due to a serious health condition or a serious injury or illness.  An employee shall advise the employer, upon request, of the reasons why the intermittent/reduced leave schedule is necessary and of the schedule for treatment, if applicable."  29 C.F.R. § 825.302(f).  The parties must work out a schedule that does not disrupt the employer's operations, subject to the health care provider's approval.  Id.  If an employee neglects to consult with an employer over planned medical

treatment, "the employer may initiate discussions with the employee and require the employee to make such arrangements, subject to the approval of the health care provider." Id. at § 825.302(e).

To protect these rights, the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided" in the FMLA. 29 U.S.C. § 2615(a)(1); ORS 659A.183 (unlawful employment practice to deny family leave to an eligible employee, or retaliate or discriminate against an individual requesting leave). A violation of the FMLA or its regulations "constitute interfering with, restraining, or denying the exercise of rights provided by the Act." 29 C.F.R. § 825.220(b). In addition, an interference claim includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." Id.

The Secretary of Labor is authorized to prescribe necessary regulations to carry out the FMLA. 29 U.S.C. § 2654.

II.    Factual Background

Although the factual background is only peripherally relevant to what is essentially a legal question, I set forth below the context for the dispute.

A.    Business and Attendance Policy

Oak Harbor is a common carrier which guarantees service within a one-hour window on a scheduled service day. In order to satisfy this guarantee in the most cost-effective way, Oak Harbor needs its employees to show up to work.

Oak Harbor's attendance policy treats any absence (or tardy), other than a previously approved vacation day or legally-protected FMLA absence, as grounds for charging an employee

with an "occurrence" (or half an occurrence point).  After nine months, an occurrence point (or

fraction of a point) will roll off an employee's personnel record.  If an employee accrues five or

more occurrence points, the employee will be subject to unpaid suspension.  Six or more

occurrence points may result in termination.

      B.     The Genesis of the Note Requirement

Oak Harbor contends it had no consistent policy regarding medical notes for employees

on intermittent leave until it hired Kim Cookson as Human Resources Manager.  In late 2007 or

early 2008, the company began uniformly requiring a note from a medical provider for

employees taking intermittent leave.  It believed a few employees seemed to be

disproportionately taking time off on Mondays and Fridays, or just before a holiday.

As a result, when an employee is approved for intermittent medical leave, Oak Harbor

sends a letter to the employee containing language along the following lines:

> In order for me to know when to apply FMLA to an absence, a medical note will
> be required from your provider for that absence.  The note will need to indicate
> you were *seen by a provider* during the absence and *how the absence relates to
> the FMLA qualifying condition*.  Without this information, I would be unable to
> apply FMLA to any specific absence.

Cookson Dep. Ex. 106 (emphasis added).

Although the letter contains no time limit, Oak Harbor interprets the policy to require a

note within 15 days of the absence or tardy.

In addition, Oak Harbor has interpreted the "note requirement" to mean the employee

need not actually visit a provider's office–despite language above indicating the employee must

be "seen" by the provider; rather the employee must only ask his provider or someone in the

provider's office to submit a brief one or two sentence note confirming the reason for the absence or tardy.

Oak Harbor contends the note requirement is a deterrent to employees lying, although it concedes the employee could lie to his doctor. The policy also ensures it keeps accurate records of FMLA use.

If the employee must visit his provider to obtain a note, Oak Harbor will reimburse the employee his co-payment. There is no evidence of when Oak Harbor informed its employees it would reimburse co-payments. In an April 24, 2013 Notice of Suspension Letter to Antti, Oak Harbor explained Antti could seek reimbursement for his co-payments if he needed to see a doctor. It then explained, "Of course, there may be some circumstances where you are able to obtain a proper note from your medical provider without incurring any expense." Rosenthal Decl. in Supp. of Antti's Mot. for Summ. J. Ex. 3, at 42.

C.    Argyle's History

Argyle began working for Oak Harbor in 2006 and had used FMLA and OFLA leave in 2008. Argyle requested leave again beginning in November 2010 for Lumbar Radicular pain and Spondylolisthesis. He hoped to have surgery the following year. The certification indicated Argyle's need for intermittent leave and part-time leave, noting ongoing monthly office visits. Argyle received approval for intermittent leave again in 2011 for his daughter's serious health condition and again in 2012 for his own medical condition.

Argyle had treatment scheduled on Fridays during the summer of 2012; he offered to provide at least one week advance notice of the appointments, but Oak Harbor insisted on a doctor's note as well. In the span of approximately three months, Argyle provided a total of 11

doctors' notes establishing the reasons for his absences.  At one point, according to Argyle, his physician refused to write any more doctor's notes.

Oak Harbor's attorney calculated the frequency of Argyle's use of intermittent leave and discovered his absences fell adjacent to a holiday or weekend 88.99 percent of the time, over a six-year period.  Argyle attended water therapy on Fridays; the sessions lasted half hour to one hour.  He could possibly have attended therapy on Saturdays or Sundays.  Argyle provided notes from a physician's assistant on some occasions, and the company accepted them.  On other occasions, he did not submit a note and received an "occurrence."

Oak Harbor put Argyle on indefinite suspension on October 11, 2012 for incurring 13 occurrences.

D.    Antti's History

Antti began working for Oak Harbor in 1993 or 1994.  He was diagnosed with a Peptic Ulcer with a GI Bleed in January 2008 and was approved for intermittent leave beginning in February 2008.  He submitted a new certification in August 2010 because he had a change in insurance coverage; he was reviewed and diagnosed by a new doctor.

When Antti contacted his doctor to obtain a note, his doctor required a visit and a $20 co-payment.  Antti's doctor did not understand why a note was required when both he and Antti knew what was wrong with Antti and what was needed to treat the medical problem.

Oak Harbor's attorney calculated Antti's use of intermittent leave fell adjacent to a holiday or weekend 94 percent of the time.[2]  Antti has received three verbal warnings, five

---

[2] Antti argues this analysis is irrelevant because it was created by Oak Harbor's attorney, in 2013, has nothing to do with Oak Harbor's actual suspicion of abuse, nor is the attorney an

(continued...)

written warnings, seven notices of intent to suspend, seven notices of suspension, and three

notices of intent to terminate because he failed to provide a medical provider's note to Oak

Harbor.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact

and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The

initial burden is on the moving party to point out the absence of any genuine issue of material

fact.  Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate

through the production of probative evidence that there remains an issue of fact to be tried.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the

court "must view the evidence on summary judgment in the light most favorable to the

non-moving party and draw all reasonable inferences in favor of that party."  Nicholson v.

Hyannis Air Service, Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (citation omitted).

## DISCUSSION

In its Complaint against Antti, Oak Harbor seeks a declaration as follows:

> The requirement of Oak Harbor that its employees who have been approved for
> intermittent leave submit a short note from the medical provider (the physician or
> a staff member) that states in one or two sentences that the absence of the
> employee is related to the family leave qualifying condition upon which
> intermittent leave was granted does not violate FMLA or OFLA or the regulations
> thereunder [for several specific reasons].

---

[2](...continued)
expert.  I consider the analysis as demonstrative only, for purposes of considering Oak Harbor's
request for declaratory relief.

Oak Harbor v. Antti Compl. ¶ 33.  It also seeks "a determination that its requirement of a short medical note is proper and differs from the detailed Department of Labor approved certification form which the company uses in certifying intermittent leave."  Id. at ¶ 34.[3]

In its Complaint against Argyle, Oak Harbor phrases its request slightly differently.  It seeks a judgment:

> (1) That the Court enter an order that Oak Harbor's note requirement is legal, enforceable and may be uniformly administered as to all employees who have been certified and approved to take intermittent leave.
>
> (2) That the Court enter an order allowing Oak Harbor to assess an "occurrence" against employees who are on intermittent leave and who are absent and have failed to submit a note from their health care provider.

Oak Harbor v. Argyle Compl. at 10.

Oak Harbor also moves for summary judgment against the disability counterclaims brought by Argyle and Antti as they relate to the doctor's note requirement.  Antti Am. Countercl. ¶ 39(a), ¶55 (Oak Harbor discriminated under the ADA and ORS 659A.112 by requiring him "each time he was absent to verify with a note from his medical provider that his absence was due to his qualifying medical condition"); Argyle Countercl. ¶ 65 (Oak Harbor engaged in disability discrimination under ORS 659A.112 for requiring Argyle "to provide a note for each medically related absence").

_____

[3]In its Motion against Antti and Argyle, Oak Harbor seeks a broader declaration that its medical note requirement does not violate FMLA, OFLA, the regulations implementing those statutes, *or any other federal or Oregon employment law or regulation, including the ADA and Oregon's disability law*.  The scope of the relief it requests in its motion exceeds both the declaration it seeks in its Complaint and the briefing it submitted.  I limit my analysis to the FMLA and OFLA, except to the extent Oak Harbor requests summary judgment against Argyle's and Antti's counterclaims under the ADA and ORS 659A.112.

I.      Whether the Note Requirement is Permitted by the FMLA/OFLA

The employees' primary argument is that Oak Harbor has no statutory or regulatory authority to require its employees taking approved intermittent leave to get a doctor's note for each absence. I agree and conclude Oak Harbor's requirement that its employees on intermittent leave provide a doctor's note for each absence is tantamount to requesting a medical certification for each absence.

I start with the text of the FMLA as a whole, "including its object and policy," in order to determine whether Oak Harbor's practice is permitted. Children's Hosp. and Health Ctr. v. Belshe, 188 F.3d 1090, 1096 (9th Cir. 1999).

One purpose of the Act is to "entitle employees to take reasonable leave for medical reasons" while, on the other hand, "accommodat[ing] the legitimate interests of employers." 29 U.S.C. § 2601(b). Congress noted, with respect to the need for leave to treat a serious medical problem, that "there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." Id. at § 2601(a). Accordingly, as explained in more detail above, the FMLA permits an employee with a serious health condition to take intermittent leave related to his or her medical condition. Id. at § 2612(b).

In addition, however, the statute reflects a fairly rigid process to document an employee's medical condition. The employer *may* require the completion of a medical certification, which must be deemed sufficient if it includes, in the case of intermittent leave, the dates of expected treatment, the medical necessity of intermittent leave, and the expected duration of the intermittent leave. Id. at § 2613 (emphasis added). If an employer disagrees with the initial medical certification, a specific statutory process authorizes an employer to request second and

Page 12 - OPINION AND ORDER ON PARTIAL SUMMARY JUDGMENT

third opinions, and to require the employee to obtain a subsequent recertification "on a reasonable basis." Id. at § 2613(c), (d), and (e).  The statutory scheme suggests Congress' intention to explicitly control the means by which an employer may obtain information from an employee's doctor.

In contrast, with respect to notifying the employer, the statute is less comprehensive.  An employee is statutorily required to "make a reasonable effort to schedule" planned medical treatments so as to avoid disrupting the employer's operations, so long as the health care provider agrees.  Id. at § 2612(e)(2)(A).  The employee is also required to give not less than 30 days' notice before leave is to begin or, if less than 30 days, "as is practicable." Id. at § 2612(e)(2)(B). There is no specific statutory guidance for giving notice in unforeseeable circumstances.

The Department of Labor, pursuant to its rule-making authority, has fleshed out the statute.  Those regulations, too, suggest by implication that information from a doctor must come only in the guise of a medical certification.[4]  For example, the regulations anticipate an employer "may find it necessary to inquire further to determine if the leave is because of a serious health condition and *may request medical certification* to support the need for such leave."  29 C.F.R. § 825.302(c) (emphasis added); see also OAR 839-009-0250(1)(b) (may request additional information).  Further, "reasonable basis" for recertification is "no more often than every 30 days and only in connection with an absence by the employee" unless an exception applies.  29 C.F.R.

_____

[4]The FMLA regulations also permit contact with a health care provider for authentication and clarification of a medical certification, but not to gather medical information.  29 C.F.R. § 825.307(a).

§ 825.308(a).[5]  An employer may request recertification in less than 30 days only in the case of

changed circumstances or when the employer doubts the continuing validity of the certification.

Id. at § 825.308(c); see also OAR 830-009-0260(9).

Finally, while the regulations permit employers to adopt their own notice procedures, and

punish employees for failing to comply with those procedures, the examples listed do not

anticipate the involvement of a doctor to confirm the existence of a medical condition.  Rather,

the examples focus on an employee's obligation to inform an employer about his absence.

Specifically,

an employer may require that written notice set forth the reasons for the requested
leave, the anticipated duration of the leave, and the anticipated start of the leave.
An employee also may be required by an employer's policy to contact a specific
individual . . . . Where an employee does not comply with the employer's usual
notice and procedural requirements, and no unusual circumstances justify the
failure to comply, FMLA-protected leave may be delayed or denied.

29 C.F.R. § 825.302(d); see also OAR 839-009-0270(7) ("An employer may require an employee

to follow the employer's established leave policy regarding periodic reporting to the employer of

the employee's current status.").  Indeed, to the contrary, "[i]f an employee submits a complete

and sufficient certification signed by the health care provider, the employer may not request

additional information from the health care provider."  29 C.F.R. § 825.307(a).

--------

[5]Oak Harbor contends the 30-day limitation exceeds the statutory authority of the DOL
and the Bureau of Labor and Industries ("BOLI").  I could not say interpreting "reasonable basis"
to be no more often than every 30 days is irrational, and Oak Harbor does not identify any reason
for me to find to the contrary.  Chevron USA, Inc. v. Nat. Resources Def. Council, 467 U.S. 837,
843-45 (1984) (implementing agency has authority to interpret the statute and adopt regulations
and, so long as the agency's interpretation is a reasonable one, and not "arbitrary, capricious, or
manifestly contrary to the statute"–it is entitled to deference); see also McPhail v. Milwaukie
Lumber Co., 165 Or. App. 596, 999 P.2d 1144, 1150 (2000) (BOLI's regulations entitled to
substantial deference).

Accordingly, while both the FMLA itself and its implementing regulations are silent on the specific question at issue here–whether Oak Harbor's doctor's note policy to support an already medically certified FMLA-protected absence is permissible–the statute and regulations "show an intent to limit medical verification to certification and recertification as delineated. Neither the FMLA nor its regulations provide for any other means by which an employer can require documentation from an employee's medical provider." Jackson v. Jernberg Indust., Inc., 677 F. Supp. 2d 1042, 1051 (N.D. Ill. 2010).  As Jackson pointed out, "[h]ad Congress, or the Department of Labor, desired to permit employers to demand such intermittent verifications, the statute or regulations would provide as much.  Instead, the regulations provide that an employer can verify the absence-condition connection by means of recertification." Id. at 1052.  While Oak Harbor attempts to distinguish Jackson on the basis that the employee had to actually visit the doctor each time he took intermittent leave–as opposed to its policy which requires only a note from the provider's office–the court's decision was not premised on the *extent* of a doctor's involvement, but that the statutory and regulatory scheme contemplated only the specified and delineated involvement of a doctor.[6]

A more recent case came to the same conclusion.  Police Benev. Ass'n Local No. 249 v. Cnty. of Burlington, L-2871-11, 2013 WL 173793 (N.J. Super. Ct. App. Div. Jan. 17, 2013) (per curiam) (unpublished).  Recognizing the analysis is limited, and the court was reviewing an arbitrator's decision under a deferential standard of review, the case provides additional support

---

[6] In addition, Oak Harbor contends the employee in Jackson had never given the employer any reason to suspect the improper use of leave.  Whether Antti or Argyle gave Oak Harbor reason to suspect their use of intermittent leave is not yet at issue since Oak Harbor's Complaint requests a declaratory judgment on the facial validity of its policy.

for my conclusion that a doctor's note may not be required for each use of intermittent leave "that has already been approved on the basis of a doctor's certification." Id. at *6.

Finally, I may defer to BOLI's "plausible interpretations of its own rules–including an interpretation made in the course of applying the rule–if that interpretation is not inconsistent with the wording of the rule, its context, or any other source of law." Middleton v. Dep't of Human Servs., 219 Or. App. 458, 183 P.3d 1041, 1046 (2008) (internal quotation and citation omitted).[7]  In 2007, when faced with an employer's demand that an employee approved for intermittent leave obtain doctor's notes stating the dates and reasons for absences, BOLI remarked that "[a] leave policy requiring an employee to provide medical verification after each OFLA related absence may run afoul of OFLA rules when, as in some cases of intermittent leave, absence occurs more frequently than every 30 days." In the Matter of WinCo Foods, Inc., Case No. 53-04, 28 Boli 259, at *28 (OR BOLI May 2, 2007).  Although BOLI concluded the changed circumstance exception authorized the employer's actions, BOLI's observation is further support for my reading of the statutory and regulatory scheme.  Additionally, BOLI recently issued a final decision in Argyle's contested case in which it concluded Oak Harbor's medical note policy is the "legal equivalent of a request for 'medical verification'" under the OFLA.  In addition, it noted "a blanket requirement for a medical verification every time intermittent leave is used violates [the OFLA regulation regarding medical verification], absent any of the (9) exceptions." In the Matter of Oak Harbor Freight Lines, Inc., Case No. 66-12, 32 Boli 34, 51 (OR BOLI Jan.

---

[7]Oak Harbor incorrectly relies on this case to argue an agency's application of its rule is not entitled to deference.  The case stands only for the proposition that the Department of Human Services was not entitled to deference in that instance as it took a stance in the administrative proceedings different from its position on appeal.  See Oak Harbor Resp. to Antti's Mot. 6.

Page 16 - OPINION AND ORDER ON PARTIAL SUMMARY JUDGMENT

15, 2014) (rejected Argyle's claim because exceptions applied) (appeal pending).[8]  Accordingly, BOLI's decisions provide additional support for my conclusion.

Oak Harbor attempts to split hairs by arguing its note policy is simply a means of independently confirming the reason an employee has given for the absence.  But by demanding a doctor's note explaining "how the absence relates to the FMLA-qualifying condition," as Oak Harbor's letter put it, Oak Harbor is essentially asking for a medical opinion establishing the "medical necessity" for the absence–the very thing certification is intended to do.  Cookson Dep. Ex. 106; 29 C.F.R. § 825.306(6) and (7).  Cookson herself testified that the doctor's note "would *certify* that that particular absence is associated with the FMLA leave."  Cookson Dep. 13:3-5 (emphasis added); see also Rosenthal Decl. in Supp. of Antti's Mot. for Partial Summ. J. Ex. 1 (note from Cookson not approving absences as FMLA because doctor's note does not "correlate" absence to FMLA).  So, while Oak Harbor says it never questioned the existence of Argyle and Antti's serious health conditions, only the necessity of each instance of leave, by requiring a medical provider to offer his or her opinion that the absence was for a serious medical condition ("the FMLA-qualifying condition"), Oak Harbor is in effect treating each absence as a separate period of FMLA leave and requiring employees to reestablish eligibility for each absence.[9]  Such

_____

[8]BOLI also issued a Notice of Substantial Evidence Determination in Antti's case that Oak Harbor violated the OFLA and FMLA when it requested medical verification more often than permitted by demanding doctor's notes for each absence.  Rosenthal Decl. in Supp. of Mot. for Partial Summ. J., Ex. 4.

[9]If, instead, Oak Harbor asked its employees on intermittent leave for a provider's note *when the reason for the absence was an appointment*, Oak Harbor's explanation would make more sense.  Such a note would confirm for Oak Harbor that the employee had attended the appointment he or she said he would be attending.  That Oak Harbor sought a doctor's note even when an employee merely required home care suggests Oak Harbor's true purpose was

(continued...)

Page 17 - OPINION AND ORDER ON PARTIAL SUMMARY JUDGMENT

a policy or practice directly conflicts with FMLA's explicit recertification procedure specifically intended to ferret out abuse.

The cases on which Oak Harbor relies do suggest some courts tolerate imposition of substantial responsibility on employees to inform employers about their need for, and use of, leave. <u>Callison v. City of Phila.</u>, 430 F.3d 117, 121 (3rd Cir. 2005) (employee at home on sick leave must notify a designated contact at the company upon leaving and returning home during business hours; employer could call or visit employee at home); <u>Lewis v. Holsum of Fort Wayne, Inc.</u>, 278 F.3d 706, 710 (7th Cir. 2002) (upheld an employer's requirement that an employee call-in to report leave when doctor's certification contained no end-date); <u>Sconfienza v. Verizon Pa., Inc.</u>, No. 07-2498, 307 F. App'x 619 (3rd Cir. Dec. 5, 2008) (unpublished) (described policy where employee must provide written certification attesting specific absences were FMLA-related, but policy was not challenged); <u>Geromanos v. Columbia Univ.</u>, 322 F. Supp. 2d 420 (S.D.N.Y. 2004) (employer could require an employee to submit weekly progress reports of her alcohol outpatient treatment). These cases stand for the proposition that an employer may require its employees to notify it of their status and intent to return to work–indeed, such policies are contemplated by the statute and regulations. <u>See</u> 29 C.F.R. § 825.302(d) (policy may require written notice, contact specific individual).

---

<sup>9</sup>(...continued)
confirming the medical necessity for the absence. I question, too, the value of such a note to Oak Harbor. In deposing a doctor in the related case of <u>Pearson v. Oak Harbor</u>,3:12-cv-733-KI, Oak Harbor asked Pearson's doctor why he wrote a note supporting Pearson's tardy on a day when Pearson was not even late. The doctor answered, "Because he told me that was the date that he missed because of symptoms he was experiencing." Oak Harbor then queried, "So you just took direction from Mr. Pearson on this point?" The doctor answered yes, "because that was the information I had to go on." Gray Dep. 36:12-20 attached to Hunt Decl. in Supp. of Mot. for Leave to File Second Am. Answer Ex. B, at 2.

In short, I sympathize with Oak Harbor's conundrum.  Intermittent leave can impose an administrative and tracking burden.  78 Fed. Reg. 8834, 8879 (Feb. 6, 2013) (summarizing employer complaints about the FMLA to the DOL).  However, if Oak Harbor's concern is leave abuse, the recertification process protects it; its doctor's note policy, untethered to the statutory and regulatory limitations on requesting such recertifications, violates the law.  Oak Harbor cannot shortcut these rules.

I do not, at this stage, address Oak Harbor's alternative argument that application of its note requirement was appropriate here when Antti's and Argyle's absences fell disproportionately on Fridays, Mondays and adjacent to holidays.  In other words, Oak Harbor argues if its uniformly applied doctor's note requirement is a violation of the FMLA, it is harmless error in these circumstances because it had authority to seek a recertification anyway.  I currently have in front of me only Oak Harbor's complaint for a declaration that its doctor's note requirement does not violate the FMLA.[10]  I decline to consider the regulations as applied to Argyle and Antti at this juncture in the litigation.

II.    Oak Harbor's Due Process Violation Argument

Oak Harbor contends regulations which could be read to prohibit its doctor's note policy violate its due process rights.  Due process means the "laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.'"  United States v. AMC Enter., 549 F.3d 760, 768 (9th Cir. 2008) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)).  Oak Harbor contends it did not know it could

---

[10]The proposed order submitted by Oak Harbor also does not address this alternative argument.

Page 19 - OPINION AND ORDER ON PARTIAL SUMMARY JUDGMENT

not ask for doctor's notes in this context and it asks the Court to avoid interpreting the statute in a way that would subject it to liability.  In other words, it is asking the Court to implement the canon of constitutional avoidance–when there are two plausible interpretations of a statute, the Court should accept the one which avoids constitutional doubts.  Clark v. Martinez, 543 U.S. 371, 382 (2005).

Oak Harbor's suggestion of vagueness is without merit.  First of all, since the FMLA regulates commercial conduct, it is subject to a less strict vagueness test.  Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498 (1982); see also Botosan v. Paul NcNally Realty, 216 F.3d 827, 836 (9th Cir. 2000) (discussing the ADA).  The reason for this is because "subject matter [of economic regulation] is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action."  Hoffman Estates, 455 U.S. at 498.

The recertification protocol is the prominent statutory and regulatory solution to question an employee's use of intermittent leave.  All of the courts to consider the issue have found no authority to request doctor's notes outside of the recertification context.  At least as of May 2007, BOLI suggested doctor's notes to support intermittent leave would be problematic.  In the Matter of WinCo Foods, Inc., Case No. 53-04, 28 Boli 259, at *28 (OR BOLI May 2, 2007).  Additionally, Oak Harbor had "the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process."  Hoffman Estates, 455 U.S. at 498; see www.dol.gov/whd/contact_us.html (providing telephone number and e-mail address to answer questions about FMLA); www.oregon.gov/BOLi/TA/pages/index.aspx (BOLI division called Technical Assistance for Employers).

Page 20 - OPINION AND ORDER ON PARTIAL SUMMARY JUDGMENT

In sum, since Oak Harbor cannot successfully show the enactment has "no standard of conduct at all"–which is the applicable test here–it cannot succeed in challenging the vagueness of the statute.  Botosan, 216 F.3d at 836.  Since I do not find vagueness in the scheme, the constitutional avoidance doctrine is not implicated.

III.    Antti's and Argyle's Disability Discrimination Counterclaims

Finally, Oak Harbor moves for summary judgment against the disability counterclaims brought by Argyle and Antti as they relate to the doctor's note requirement.  Antti alleges Oak Harbor discriminated under the ADA and ORS 659A.112 "by denying him an accommodation" as follows:  requiring him "each time he was absent to verify with a note from his medical provider that his absence was due to his qualifying medical condition" and causing him to "incur medical costs."[11]  Antti Am. Counterclaim ¶ 39, ¶55.  Similarly, Argyle alleges Oak Harbor engaged in disability discrimination under ORS 659A.112 for requiring Argyle "to provide a note for each medically related absence."  Argyle Counterclaim ¶ 65.

Antti, in his briefing, contends Oak Harbor's doctor's note policy violated the ADA, first, by interfering with his ability to exercise his rights under the ADA and, second, by failing to reasonably accommodate him.

With respect to his interference argument, the ADA makes it "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this chapter."  42 U.S.C. § 12203(b).  The provision should not be read so broadly as "to prohibit any action whatsoever that in any way hinders a member of a protected

---

[11]It is now clear Oak Harbor will reimburse co-payments so I find this portion of the counterclaim moot.  To the extent Antti is arguing he was penalized for leave taken as a reasonable accommodation,

class." Brown v. City of Tucson, 336 F.3d 1181, 1192 (9th Cir. 2003) (typographical error

corrected and internal quotation omitted). Additionally, "conclusory allegations–without

more–are insufficient to state a violation of § 503(b)." Id. at 1193.

Antti's briefing is limited on his counterclaim. He argues that requiring a doctor's note

for every intermittent leave-related absence is more onerous than the policy found in the most

recent Collective Bargaining Agreement. Rather than cite to the CBA, he points to testimony

from Cookson explaining the company requires a "Return to Work note if any employee is absent

three or more days." Cookson Dep. 33:23-24. It appears a "return to work" note is a medical

release indicating the employee, who was "off work due to any illness, or injury and under a

doctor's care" may safely return to work. CBA, Hunt Decl. Ex. 6, at 71. This policy serves a

different purpose than does the intermittent-leave doctor's note policy. As a result, Antti has not

evidence of Oak Harbor's differential treatment of disabled employees. Further, Antti fails to set

forth facts that the doctor's note policy dissuaded him from exercising his rights under the ADA.

With respect to his reasonable accommodation argument, he contends Oak Harbor

refused to be flexible in its note requirement. When Antti contacted his doctor to get a note, the

doctor declined to give him a note without seeing him. He argues Oak Harbor did not offer to

accommodate Antti, and therefore treated him differently. A "reasonable accommodation,"

however, is the way in which an employer can "enable[] [an employee] to perform the essential

functions of an available job." Dark v. Curry Cnty., 451 F.3d 1078, 1088 (9th Cir. 2006). I fail to

see, and Antti does not argue, that his disability prohibited him from obtaining doctor's notes.

Antti's doctor's alleged refusal to provide notes has nothing to do with Antti's stated

Page 22 - OPINION AND ORDER ON PARTIAL SUMMARY JUDGMENT

disability–peptic ulcer disease.  Additionally, Antti fails to present evidence that he was treated differently.  Antti has failed to raise an issue of fact on his reasonable accommodation theory.

Argyle offers no argument to defend Oak Harbor's motion for summary judgment against his disability counterclaim referencing the doctor's note requirement.  As a result, and for the same reasons set forth above, his counterclaim for disability discrimination under ORS 659A.112 is dismissed.  See ¶ 65; see also Arnold v. Pfizer, Inc., __ F. Supp. 2d __, 2013 WL 4828737, at * 24 (D. Or. Sept. 9, 2013) (Oregon disability statute should be construed consistent with the ADA to the extent possible and standard for establishing prima facie case is the same).

## CONCLUSION

For the foregoing reasons, Oak Harbor's Motion for Partial Summary Judgment [61, 62][12] is denied in part and granted in part and Antti's Motion for Partial Summary Judgment [69] is granted.  I deny Oak Harbor's request for declaratory relief.  Antti's and Argyle's counterclaims under the ADA and ORS 659A.112 are dismissed to the extent they rely on the doctor's note policy.

IT IS SO ORDERED.

DATED this ___19th___ day of February, 2014.


  _/s/ Garr M. King_____
  Garr M. King
  United States District Judge

---

[12]Oak Harbor's motions are filed at ECF 26 and 27 in the trailing case of Oak Harbor v. Argyle, 3:13-cv-416, and at ECF 16 and 17 in the stayed case of Antti v. Oak Harbor, 3:12-cv-546.  Antti's motion is filed at ECF 34 in 3:13-cv-416 and ECF 24 in 3:12-cv-546.